E. J. FOCKENS and Others v. UNITED STATES EXPRESS COMPANY.[1]

November 30, 1906.

Nos. 14,899—(63).

**Carrier—Injury to Shipment—Presumption.**

When goods are delivered for transportation in sound condition to a common carrier, and by it delivered to the consignee in a damaged state, the presumption arises that the damage was caused by negligence of the carrier, and it is required to prove the contrary by a preponderance of evidence. This rule applies to perishable fruit, and the carrier is required to exercise reasonable care, and to take into consideration the character of the fruit, condition of the weather, and the time necessary to complete transportation.

**Charge to Jury.**

Although, in charging the jury, the court inaccurately termed the tendency of ripe berries to deteriorate an act of God, nevertheless the correct rule of law was stated respecting the duty of appellant.

**Evidence.**

The evidence was sufficient to sustain a finding to the effect that the damage was occasioned, at least in part, by the negligence of the carrier.

[1]Reported in 109 N. W. 834.

Appeal by defendant from an order of the district court.for Winona county, Snow, J., denying a motion for a new trial, after a trial and verdict in favor of the plaintiff for $79.04. Affirmed.

*Davis, Kellogg & Severance* and *Webber & Lees,* for appellant.

*Brown, Abbott & Somsen,* for respondents.

LEWIS, J.

June 22, 1903, respondents delivered to appellant company at Winona, Minnesota, thirty crates of strawberries, consigned to Andrew Schoch of St. Paul, and on the afternoon of the 24th delivered a second shipment of twenty eight crates, consigned to the same party. The first shipment arrived in St. Paul about ten o'clock on the evening of the 22d, and was delivered to the consignee between eight and nine o'clock the next morning, and refused by him upon the ground that the berries were in a damaged condition. The second shipment arrived during the evening of June 25th, and was delivered to Schoch the following morning, and refused for the same reason as the first shipment.

This action was commenced to recover damages alleged to have been occasioned by the negligent handling of the berries.

1. There was evidence in the case to the effect that the berries were in good condition and not overripe when delivered to the carrier at Winona, and that upon their delivery to the consignee in St. Paul they were in a soggy condition, and had settled down and caked, and the juice had run all over the boxes and crates.

Respondents relied upon the rule of law that if the berries were in good condition at the time of delivery to the carrier at Winona, and in a damaged state when received by the consignee in St. Paul, then the burden was upon the carrier to prove that such damage was not occasioned by any negligent act on its part.

The evidence upon this branch of the case is not very satisfactory. The berries were grown about seventeen miles from Winona. The first shipment was picked June 21, boxed and crated, and taken to Winona in an ordinary wagon over an ordinary country road, leaving about three, and arriving at Winona between seven and eight o'clock on the morning of the 22d. A considerable portion of the berries were sold from respondents' store at retail, and about noon of that day thirty

crates were nailed up and delivered to the express company for shipment to St. Paul. It does not appear where the berries were kept from the time they were delivered to appellant until they went out on the 6:30 evening train; but they were under the exclusive control and management of the express company.

One witness testified that the boxes were roughly handled in loading, that they were thrown from the truck into the express car, and that the crates were piled in the car like cordwood. On the other hand, it was shown that in this instance the crates were received and piled in the car in the usual manner, and upon delivery at St. Paul were put upon trucks, wheeled into appellant's warehouse, and the crates separated, so as to allow circulation of air, and remained there until the following morning, when they were delivered to the consignee. There was no evidence that any of the boxes were broken or jammed.

The weather was not particularly warm, the thermometer running from eighty two to eighty eight degress, although there was considerable humidity in the air, and it was shown that the natural tendency of ripe berries under such conditions was to rapidly deteriorate. There was some evidence to indicate that during that kind of weather ripe fruit should be carefully handled in order to avoid any jarring which might cause the berries to settle or sink down, and that during foggy or damp weather such fruit keeps better when not exposed to the air.

From all the evidence, we are unable to say that it conclusively appears that the carrier did not substantially contribute to the damage by the manner in which it handled the fruit.

2. While it was hardly permissible to designate the natural tendency of berries to disintegrate under favorable climatic conditions as an act of God, the court later on made it clear that if the berries were damaged by reason of their tendency to deteriorate, considering their condition and the weather, and if the company was not negligent in handling the fruit, then there would be no liability. Such we conceive to be the essence of the rule as finally given to the jury.

That the shipper makes out a prima facie case when he proves that the goods were delivered to the carrier in a good condition and to the consignee in a damaged state, and the carrier is then called upon to prove that the damage did not arise by any negligence on its part, has often been declared the proper rule governing such cases. In Shriver

v. Sioux City & St. P. R. Co., 24 Minn. 506, 31 Am. 353, it was said that it is a rule of evidence that things once proved to have existed in a particular state are presumed to have continued in that state until the contrary is shown, and because of the superior ability of the carrier to furnish the proof as to how the damage occurred, there is nothing unreasonable in requiring the carrier to assume the burden of so doing. To the same effect, see Lindsley v. Chicago, M. & St. P. Ry. Co., 36 Minn. 539, 33 N. W. 7, 1 Am. St. 692; Hull v. Chicago, St. P., M. & O. Ry. Co., 41 Minn. 510, 43 N. W. 391, 5 L. R. A. 587, 16 Am. St. 722; Boehl v. Chicago, M. & St. P. Ry. Co., 44 Minn. 191, 46 N. W. 333; Shea v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 63 Minn. 228, 65 N. W. 458; Smith v. Great Northern Ry. Co., 92 Minn. 11, 99 N. W. 47; Beede v. Wisconsin Cent. Ry. Co., 90 Minn. 36, 95 N. W. 454, 101 Am. St. 390; Calender-Vanderhoof Co. v. C., B. & Q. Ry. Co., supra, page 295, 109 N. W. 402.

While in some of these cases the burden of proof is said to shift to the carrier, which is not strictly accurate, there can be no doubt of the intention conveyed by the language. Whenever the plaintiff makes out a prima facie case, he is entitled to rest, and the defendant is then called upon to meet the proofs and show the contrary. In cases of this character the rule wisely calls upon the carrier to meet the presumption of negligence by showing a state of circumstances which otherwise accounts for the damage, and this it must do by a preponderance of evidence.

Order affirmed.