## E. W. LEWER v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

January 28, 1916.

Nos. 19,572—(212).

**Carrier — evidence of damage to shipment while in transit.**

1. A cast-iron heating boiler shipped from St. Paul to Waseca by train, transferred from the train by dray and lowered into a basement

[1] Reported in 156 N. W. 6.

and there installed, was found, after installation, to be cracked. The evidence is that it was sound when shipped and that it was carefully handled after it was taken from the train, and received no jars or jolts, but there is evidence that such boilers crack very easily, and there is no positive evidence that it was not cracked while so handled. The evidence is not conclusive that the damage occurred while on the train, and the rule that, when goods are delivered to a carrier in good con-dition and arrive at destination in damaged condition, a *prima facie* case of liability is made out, does not, as a matter of law, apply.

**Uncontradicted testimony not conclusive.**

2. The jury might infer from all the evidence that the boiler was damaged in handling after it left the train, and the case is not one for the application of the rule that testimony uncontradicted and unim-peached cannot be disregarded.

Action in the district court for Waseca county to recover $43.75. The case was tried before Childress, J., and a jury which returned a verdict for defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*L. D. Rogers* and *Moonan & Moonan,* for appellant.

*W. H. Bremner, F. M. Miner* and *P. McGovern,* for respondent.

HALLAM, J.

1. Plaintiff, the owner of a garage at Waseca, purchased of Crane & Ordway, of St. Paul, a cast-iron heating boiler. The boiler was shipped over defendant's road consigned to plaintiff at Waseca. It was in one piece and its weight was seven or eight hundred pounds. There is evidence that the boiler was in good condition when it left the store of Crane & Ordway. It was shipped in a box car with other merchandise. The other merchandise arrived at destination in good condition. No one inspected the boiler on its arrival. A drayman with the help of several men, including plaintiff, took it from the car. They rolled it over and over to the door of the car. The dray was about six inches lower than the door of the car. No planks were used, but the boiler was rolled from the car to the dray. The boiler was then taken on the dray four blocks to plaintiff's garage. There it was unloaded by sliding it down a plank, and was rolled into the garage. It was slid down into the basement of the garage with block and tackle, then rolled on a plank

to an elevated base about a foot from the floor. The work of installing the boiler consumed three or four days. No one examined the boiler until it had been set up in place. Water was then put into it and then for the first time a crack was discovered. This crack was variously described as from two to six inches long, and wide enough so that you could put in a thin knife blade. Plaintiff brought this action, claiming that the crack was caused by the negligence of defendant carrier. The jury found for defendant. · Plaintiff contends that the evidence is conclusive that defendant is liable.

The rule is well settled that, if goods are delivered to a carrier in good condition and arrive at destination in damaged condition, a *prima facie* case of liability is made out, and the carrier is then called upon to prove that the damage did not arise from its negligence. Fockens v. United States Express Co. 99 Minn. 404, 109 N. W. 834. But it is plain that before this rule can be invoked it is incumbent on the plaintiff to prove both the delivery to the carrier in good condition, and the delivery by the carrier in damaged condition. There was evidence from which the jury might find in favor of plaintiff on both of these points, but under the evidence they were not bound to find that the boiler was delivered by defendant in damaged condition. There is no direct evidence as to where the damage was done. The claim that it was done while on the cars is based on the testimony calculated to show that it could not have been damaged after its arrival. But the evidence on this point is far from conclusive.

The witnesses who handled the boiler after its arrival at Waseca testified that it was carefully handled, was never dropped, and that it did not receive any jar or jolt. The evidence shows, however, that these boilers have a hollow air space in them and crack very easily. The testimony as to the care with which the boiler was handled after its arrival is persuasive but not conclusive proof that it could not have been damaged while so handled, and if we eliminate the testimony of the steam fitter as to what occurred while it was in his possession, no witness undertook to say that the boiler was not damaged in handling after its arrival. Had they done so, it would only have been matter of inference or opinion.

2. Clearly this is not a case for the application of the rule laid down in Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015, that, "where the

positive testimony of witnesses is uncontradicted and unimpeached either by other positive testimony or by circumstantial evidence, either extrinsic or intrinsic, of its falsity, a jury * * * has no right to disregard it." The jury had a right to consider all the facts and circumstances in evidence bearing upon the probability that a casting broken no one knows when or how, might have been broken by the handling that it received after it left the train. The work of the jury was largely a matter of drawing inferences from uncontroverted facts. We are of the opinion that reasonable men might fairly draw the same inference that the jury evidently did, namely, that the casting was broken after it left the train. This being so, the verdict must be sustained.

Order affirmed.