OPENHYM et al. v. MAINE S. S. CO.

(Supreme Court, Appellate Term. February 8, 1911.)

1.. BAILMENT (§ 31*)—FAILURE OF BAILEE TO DELIVER ON DEMAND — NEGLI-
GENCE.

Unexplained failure to deliver property by a bailee upon demand,
where delivery of the property to the bailee is conceded, makes out a
prima facie case of negligence against such bailee.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec.
Dig. § 31.*]

2. CARRIERS (§ 134*)—CARRIAGE OF GOODS—DELIVERY OF GOODS FOR TRANS-
PORTATION—SUFFICIENCY OF EVIDENCE.

Evidence held not to support a finding that goods alleged to have been
lost by a carrier were delivered to it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–592; Dec.
Dig. § 134.*]

Appeal from Municipal Court, Borough of Manhattan, First Dis-
trict.

Action by Augustus W. Openhym and others against the Maine
Steamship Company. Judgment for plaintiffs, and defendant appeals.
Reversed, and new trial ordered.

Argued before GIEGERICH, BRADY, and GAVEGAN, JJ.

Wallace, Butler & Brown (George W. Hinckley, of counsel), for
appellant.

Ralph James M. Bullowa, for respondents.

BRADY, J. Plaintiffs allege that the defendant is a foreign cor-
poration engaged as a common carrier in the business of transporting
passengers and merchandise between the ports of New York and
Portland, Me., and that on August 7, 1909, at New York City, the
plaintiffs delivered to the defendant a case of merchandise, to be
transported from this city to F. H. Butler, at Portland, and that de-
fendant agreed to safely transport said ·merchandise for a freight
paid them, and to deliver the same at Portland; that said case con-
tained silk of the value of $357.40, and was the property of plaintiffs;
that defendant did not safely transport said case to Portland, but neg-
ligently lost the contents of the same, and permitted other merchandise
of no value to be substituted in its place.

Plaintiffs' employé testified: That in August, 1909, he placed in a
case 14 pieces of silk, weighing about 80 pounds. That the case was
nailed up and strapped and addressed: "F. H. Butler, Portland,
Maine." The case had been used before, and was nailed with wire
nails. The strapping was of wood, and had not been used before.
The case was not in any manner sealed. A truckman called by plain-
tiffs testified: That on August 7, 1909, he went to plaintiffs' shipping
department and received a case. That it was about 2 o'clock p. m.
The case was marked "Maine Steamship." That he took it to the
Maine Steamship Company, with another case of plaintiffs, marked
also "Maine Steamship," which had been left for him at his business

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stand. That he took both cases to the same clerk, who receipted therefor. That the witness had other packages on his truck, which he delivered to places other than the Maine Steamship Company. That these other deliveries took from ten minutes to two hours, perhaps three hours. That he left somebody on the truck while he made the deliveries. The case had been marked by plaintiffs 108 pounds, but was not weighed by defendant. The receipts for the packages, offered in evidence and marked Defendant's Exhibits 1 and 2, showed that the truckman was mistaken in his testimony as to the time the cases were delivered to defendant, for the reason that the name of the carrying steamer in Exhibit 1 was the steamship North Star, and that in Exhibit 2 was steamship Georgia, which defendant's receiving clerk testified indicated that one package (Exhibit 2) was received before 3:30 p. m. on August 7th, in time to ship on the Georgia, which sailed at 4 p. m. on that day, and that the other package (Exhibit 1) was not received until after 4 p. m., and was shipped on the North Star, which sailed on the following Monday morning. The receipts were also signed by different clerks of defendant. When the case in question reached Portland, it was opened and found to contain old quilts and a desk drawer. The original contents, 14 pieces of silk, had been abstracted between the shipping department of plaintiffs and the office of the consignee at Portland. It weighed at Portland about 68 pounds.

I do not think that the plaintiffs proved sufficiently that the truckman delivered to the defendant the case and contents as packed by them. The truckman made other deliveries, after he received the case and before he left same at the defendant's dock. He stated that deliveries took time, varying from a few minutes to two or three hours. He stated that he left a man on the truck whenever he left it for the purpose of making deliveries, but did not state who the man was, nor was the man produced as a witness by plaintiffs. The alleged discrepancy in weight of the case as marked and as ascertained in Portland can be accounted for by the fact that there was no proof that the case which was marked by plaintiffs at 108 pounds really weighed that amount; and, if it did, the quilts, found to be wet at Portland, would naturally have been much wetter and heavier at New York, four days prior. Failure to deliver property by a bailee upon demand, unexplained, makes out a prima facie case of negligence against such bailee (Canfield v. B. & O. R. R. Co., 93 N. Y. 538, 45 Am. Rep. 268, and cases cited) ; but that is only where the delivery to the bailee of the article which is the subject of the bailment is conceded. The Canfield Case was very much like the present one. See first report thereof, 75 N. Y. 147. There some of the contents, placed in a box by plaintiff at Washington, were found to be missing when the box was delivered by the defendant in New York City. Judge Hand, writing the opinion in 75 N. Y. 147, says:

"I have come to the conclusion, although with some hesitation, that the evidence permitted the jury to find that the property was delivered to the defendant at Washington. It was proved that it was properly packed in one of the eighteen boxes, and it was *admitted* that these boxes and a barrel were delivered to a cartman to be taken to the depot of the defendant, *and*

*that Evers, one of the parties interested in them, left the store with the cartman.* There is no direct proof that the goods lost were in any one of the packages when those packages were received by the defendant; but I think that in the absence of evidence of any suspicious circumstances, or of any appearance of breaking into or disturbance of the packages when so received, and upon the presumption that their contents continued the same as when they left the store of D. Wolf, a finding to that effect was authorized."

What was meant or intended by the expression "evidence of any suspicious circumstances" does not appear, but it is reasonable to assume that evidence of opportunity for the theft or abstraction of the contents before delivery to the carrier would fill the bill. Such evidence was present in the case at bar, and due weight should be given to the circumstance that in the Canfield Case one of the owners accompanied the cartman, which created the natural presumption that the boxes were under the closest guard and surveillance and protection against interference. I am of the opinion, therefore, that proof of delivery to the defendant herein of the original contents of the case was not sufficient to warrant a finding thereon in favor of the plaintiffs.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.