No. 25,219.

SEYMOUR DRY GOODS COMPANY, *Appellee*, v. THE MISSOURI PACIFIC
RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

DAMAGES—*Loss in Shipment of Merchandise—Evidence Sustains Finding that
Merchandise Was Delivered to Initial Carrier in Good Condition.* In an
action for damages to an interstate shipment of merchandise, the evidence
is examined and held sufficient to sustain a judgment that the shipment was
delivered to the initial carrier in good condition.

Appeal from Crawford district court, division No. 2; GEORGE F. BEEZLEY,
judge. Opinion filed April 5, 1924. Affirmed.

*W. P. Waggener, J. M. Challiss,* both of Atchison, and *J. J. Campbell,* of
Pittsburg, for the appellant.

*F. B. Wheeler,* and *R. L. Robertson,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for loss in a shipment
of dry goods by freight. It was tried to the court, judgment was for
plaintiff and the defendant appeals.

The Seymour Dry Goods Company of Pittsburg, Kan., pur-
chased a quantity of silk hose from Paul Guenther, Inc., of New
York city. The initial carrier, the New York Central Railway
Company, was ordered to deliver the shipment to the Chicago &
Alton at Chicago, and that company to deliver to the Kansas City &
Southern at Kansas City for final delivery at Pittsburg. In some
undisclosed way the Missouri Pacific Railroad Company got hold
of the shipment at Kansas City and delivered it to Pittsburg. Upon
reaching its destination it was discovered that the box containing
the merchandise had been broken open and goods to the amount of
$131 had been extracted therefrom. The amount of the damage, if
any, and that the shipment was in bad condition when delivered by
the terminal carrier, appear not to be questioned. The only question
presented here is whether the evidence was sufficient to justify the
court in finding that the goods were in good condition when deliv-
ered to the initial carrier. Upon receipt of the shipment the initial
carrier issued its bill of lading in the usual form, which recited,
among other things, "Received, . . . the property described be-
low, in apparent good order, except as noted (contents and condi-

tion of contents of packages unknown), marked, consigned and destined as indicated below . . ." There was no notation on the bill of lading to indicate that the shipment was not in apparent good order. A witness of the shipper testified that he checked this shipment and itemized its contents. There were ninety-four boxes packed in one case; that the contents were in good shape; that the goods were on a table when he checked them; that after that a packer put the goods in a case. Witness was not present when the goods were packed. That the goods were checked when they were put in the case; that the witness last saw the goods on the floor of the shipping room and saw them delivered to the truckman, who was a driver for the transfer company, and that the goods were intact when delivered to the truckman. The packer testified that he packed the boxes in good condition and put them in a wooden case lined with paper, after which the cooper nailed on the lid, and that the goods were in good condition. The testimony of the truckman who hauled· the shipment to the depot of the initial carrier was not produced. Appellant contends that this was a fatal gap in the testimony; that the burden was upon plaintiff to establish by a preponderance of the credible evidence the delivery of the goods to the initial carrier in perfect condition, and in order to do this it is necessary to have the testimony of the individuals who actually handled the goods or had any custody or control of the same from the inception of the shipment to the receipt thereof by the initial carrier, and further contends that the recital in the bill of lading issued by the initial carrier to the effect that the shipment was received in apparent good order is not binding on the defendant.

The liability of the defendant for loss or damage to the shipment in question is governed by the federal statute since it is an interstate shipment. In *Chicago & N. W. Ry. v. Whitnack Co.*, 258 U. S. 369, 371, it was said:

"The rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon acts of Congress, agreements between the parties and common-law principles accepted and enforced in the federal courts. . . . 'A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition . . . will be held liable in an action for the damage . . . without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them.'" (See, also, *S. Valentine & Co. v. A. T. & S. Fe Ry. Co.*, 220 Ill. App. 188; *Johnson v. Missouri Pac. R. Co.*, 249 S. W. 658 [Mo.].)

*Nelson et al. v. Woodruff et al.*, 66 U. S. 156, quotes approvingly from *Hastings v. Pepper*, 11 Pick. 43:

" 'It may be taken to be perfectly well established, that the signing of a bill of lading, acknowledging to have received the goods in question in good order and well conditioned, is *prima facie* evidence that, as to all circumstances which were open to inspection and visible, the goods were in good order; but it does not preclude the carrier from showing, in case of loss or damage, that the loss proceeded from some cause which existed, but was not apparent, when he received the goods, and which, if shown satisfactorily, will discharge the carrier from liability. But in case of such loss or damage the presumption of law is, that it was occasioned by the act or default of the carrier, and, of course, the burden of proof is upon him to show that it arose from a cause existing before his receipt of the goods for carriage, and for which he is not responsible.' " (p. 160. See, also, 1 Hutchinson on Carriers, 3d ed., § 163; Mitchell on Carriers, 345; 4 Elliott on Railroads, 3d ed., §§ 2125, 2140; *Bettman v. Railroad,* 167 Mo. App. 729; *Canney v. American Express Co.,* 222 Mass. 348.)

Where a box of merchandise is securely closed the bill of lading, considered alone, does not bind the carrier as to its contents. (*Shore v. New York, N. H. & H. R. Co.,* 121 Atl. 344 [Conn.]; *Hines v. Warden,* 229 S. W. 957 [Tex.]; *Dworkwitz v. New York Central R. R. Co.,* 230 N. Y. 188.) But in this case the court had more than that. The goods were counted, packed, boxed and delivered to the truckman. There is no doubt about the goods being in the box at that time. The box was delivered to the initial carrier, as shown *prima facie* by the bill of lading, and as positively shown by the fact that it was transported by the several carriers and actually delivered to the consignee. As to its condition at the time it was received by the initial carrier, the evidence is clear that it was in good condition shortly before, when the truckman got it at the seller's warehouse, and the bill of lading reciting that it was in apparent good order, except as noted, and without any notation indicating bad order, shows *prima facie* that it was in good order, so far as the ordinary inspection of its exterior disclosed.

In *Southern Ry. Co. v. White Mercantile Co.,* 207 Ala. 520, recovery was had against the connecting carrier for failure to deliver six Nara rugs delivered to the initial carrier. The appellant contended, first, the proof failed to establish a delivery of the rugs in controversy to the initial carrier; second, there was no evidence to show that the package received by the appellee had been tampered with en route. The whole evidence was furnished by two witnesses called by the plaintiff. One, who delivered the shipment to the initial car-

rier, testified that the shipment consisted of three packages, two of which purported to contain, one six Nara rugs, the other four Grassex rugs, were not examined by him but were shipped as they came from the mill. It was the practice of the mill to ship six rugs in a bundle, but in one of the bundles it was conceded that four rugs were wrapped. These packages were covered with grass matting. In the third package he placed two Marie Antoinette rugs and covered the package with burlap. The other witness testified to the receipt of three packages for the consignee, one containing the four Grassex rugs and two other bundles, each containing one Marie Antoinette rug. He testified that so far as he could tell the bundles had not been tampered with; if they had he could not detect it. On this state of facts the court found for the plaintiff for the value of the six Nara rugs. This judgment was sustained as having some evidence to support it.

In *Block Bros. Clothing Co. v. Missouri Pac. R. Co.*, 253 S. W. 35 (Mo.), there was a shipment of a box containing fifty-four suits of men's summer clothes. As to the delivery to the initial carrier the evidence was that the consignor's stock clerk and shipping clerk selected, checked and rechecked the suits and packed them into a wooden box properly sealed and addressed to the consignee and the box delivered by the consignor's drayman to the initial carrier, which received it, giving a receipt therefor stating that it was in apparent good order. This was held to be sufficient evidence of the receipt of the goods by the initial carrier in good condition and it is said that when that is shown the law raises the presumption that the goods continued in good condition or proper quantity down to their delivery to the last carrier and that the injury or loss occurred while they were in the latter's possession. When the shipment was inspected at the consignee's place of business it was noticed that the box had been broken into and some of the suits were missing. The evidence in the main was upon the question of whether or not the box might have been broken into after its delivery by the terminal carrier to the consignee.

Viewed in the light of these authorities the evidence was sufficient to sustain the judgment of the court.

The cases cited by appellant are not very convincing. In *Wallens v. New York Cent. & H. R. R. Co.*, 166 N. Y. S. 1083, the decision was by the trial court ruling upon a motion for nonsuit. Here we

must sustain the judgment of the trial court unless it can be said as a matter of law that there is no competent evidence to support it. In *Baer Bros. v. N. Y. C. & G. R. R. Co.*, 83 Misc. Rep. 88, 144 N. Y. Supp. 682, the evidence was that the shipment was in good condition when delivered by the terminal carrier to the truckman for the consignee. Here the evidence is that the shipment was in damaged condition when delivered by the terminal carrier. In *Openhym v. Maine S. S. Co.*, 127 N. Y. Supp. 463, there were "suspicious circumstances" evidencing opportunity for the theft or abstraction of the contents between the time the goods left the warehouse of the consignor and their delivery to the initial carrier, which circumstances caused the court to distinguish it from the case of *Canfield et al. v. Baltimore & Ohio R. R. Co.*, 75 N. Y. 147, 93 N. Y. 532, where the terminal carrier was held liable under evidence similar to that presented in this case, but without any of the "suspicious circumstances" noted in the Openhym case.

The judgment of the court below is affirmed.