## S. Valentine & Company, Appellee, v. Atchison, Topeka & Santa Fe Railway Company, Appellant.

### Gen. No. 25,517.

1. COMMERCE, § 5*—*what rules govern interstate shipments.* In an action against a carrier involving an interstate shipment, the rights of the parties must be determined by the Interstate Commerce Act, the contract of the parties, and the decisions of the federal courts.

2. CARRIERS, § 69*—*what is extent of liability of carrier of goods.* A common carrier is liable as an insurer for the safe transportation of goods except where the loss happens, by the act of God, by the act of the public enemy, by the act of public authority, by the fault of the shipper, or by the inherent vice or infirmity in the goods shipped.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

S. Valentine & Co. v. A., T. & S. Fe Ry. Co., 220 Ill. App. 188.

3. CARRIERS, § 48*—*when oral evidence is admissible to contradict bill of lading.* A bill of lading acknowledging the receipt of goods in apparent good condition is nevertheless only a receipt and can be contradicted by other evidence.

4. CARRIERS, § 138*—*what evidence is admissible in action for injury to goods.* In an action against a carrier for loss of oil in transit, evidence showing that the barrels used absorbed a certain amount of oil, and testimony of experts that the inevitable effect of heat upon the oil was to cause it to expand in a way which would make the staves of the barrels give way was competent to show that the wooden barrels used were improper vessels for carrying the oil.

5. CARRIERS, § 130*—*what carrier may show to avoid liability for injury to goods.* Where defects in a shipment are perfectly apparent, it is the carrier's duty to refuse the shipments, and, having elected to carry them in a defective condition, the carrier will not be allowed to urge these defects as a defense; but this does not preclude the carrier from showing that the loss proceeded from a cause which existed but was not apparent when he received the goods.

6. CARRIERS, § 140*—*when injury to goods is question of fact.* In an action against a carrier for loss of oil in transit, evidence tending to show that the loss was due to inherent nature of the oil and by defects in the barrels which were not apparent to the carrier raised an issue of fact for the jury and a directed verdict for plaintiff was improper.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded. Opinion filed November 30, 1920.

HOMER W. DAVIS, JOHN R. ONG and SLOANE TURGEON, for appellant.

FISHER, BOYDEN, KALES & BELL, for appellee; WALTER T. FISHER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The plaintiff in this case recovered a judgment for the sum of $1,821.83 entered upon the verdict of a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

190    Appellate Courts of Illinois.

S. Valentine & Co. v. A., T. & S. Fe Ry. Co., 220 Ill. App. 188.

jury, returned under an instruction of the court so to do, all the evidence offered on behalf of the defendant having been stricken by the court on plaintiff's motion.

The plaintiff sued for damages alleged to have been sustained by it on 150 barrels of China wood oil, shipped by the lines of defendant, a common carrier, from San Francisco, California, to Chicago, Illinois.

The declaration alleged default in the promise of defendant to safely and securely carry the same, and in an amended bill of particulars as filed, plaintiff claimed as damages the "reasonable cash market value at Chicago, Illinois, on August 25, 1916" of the difference between the number of pounds of oil delivered to the defendant at San Francisco and the number of pounds of oil delivered in Chicago, less shrinkage by absorption, at the price of 11¾ cents per pound. The defendant filed a plea of the general issue.

The plaintiff offered evidence tending to show that the oil was in barrels, which on arrival at the port leaked somewhat; that the same were recoopered and delivered to the defendant in apparent good order; that the defendant received the same after inspection issuing therefor a standard form of bill of lading signed by its agent, which acknowledged the receipt of the same "in apparent good order, except as noted. Contents and condition of contents of packages, unknown." It was stipulated by the parties:

"Car C. B. & Q.–106310, containing 75 barrels of China wood oil referred to in plaintiff's declaration herein, was loaded at San Francisco, California, on, to wit, August 2, 1916, and was thereupon transported by the plaintiff to Amarillo, Texas, arriving at 5:20 a. m. August 12, 1916, at which point the contents of said car was transferred into car T. & N. O.–35108. Said car was delivered to and unloaded by the consignee, the plaintiff in this case, August 25, 1916. * * * Car AT—61926, containing 75 barrels or the balance of the shipment referred to in the declaration

herein, was loaded at San Francisco, California, on, to wit, August 2, 1916, and was thereupon transported by the defendant to Chicago, Illinois, arriving August 15, 1916, at 6 p. m., at which point it was delivered to the Chicago & North Western Railroad, and placed by said company on the unloading tracks of the consignee, and unloaded by it, the plaintiff in this case, August 25, 1916.''

It was also proved that the barrels of oil arrived in bad condition. The testimony of plaintiff's superintendent on that point is not contradicted in any material matter. It is to the effect: ''The oil was dripping along the side of the car; alongside of the rail there were puddles of oil, and the tracks of the cars were covered with it, and between the tracks there was a puddle of oil, perhaps an inch deep, and when you looked into the interior of the car, the floor was completely covered with oil, and every barrel was covered with oil. Some of the barrels had no heads in them. Practically all of the barrels had hoops off of them; they had dropped off. A few of the staves were knocked in.''

The net weight of the shipment at points of origin and destination showed a loss in weight of 16,734 pounds out of a total shipment of 58,351 pounds.

Plaintiff also introduced evidence showing the amount of damage computed in conformity with the provisions of the bill of lading ''on the value of the property at the place and time of shipment,'' deducting from the loss the amount which was found to be the usual loss from absorption of the oil from the barrels in which it was contained.

The defendant then offered evidence tending to show that the shipments, originated in China, traveled from three to four thousand miles to San Francisco; that some of the barrels leaked upon arrival there; that these were recoopered; that the recooperage consisted in driving, flagging and reheading, that is, in driving the hoops tight in the barrels, filling up the spaces

between the staves with flagging, which is a dry corn husk with pibete cells; that in any shipments of this kind of oil there are a certain number of hoops and staves damaged; and that practically every shipment required recoopering at San Francisco; that these were oriental barrels, the barrels being of wood and rattan; that the nature of the oil was such that it would absorb into the wood itself and cause the hoops in some cases to slip; that when oil of this kind is subjected to the heat of the sun's rays it will dry up the barrels and cause them to leak. That after the shipment was placed into the car, it was inspected by defendant and found to be in good condition, and that it was loaded in a proper manner so as to prevent shifting, and braced by timbers and cleats; that the cars themselves were in good condition and of the kind usually used for such transportation.

A chemical expert testified:

"That China wood oil comes from a nut which is about two or three inches in diameter and contains from two to five seeds from which the oil is extracted, and that he made a physical and chemical test of China wood oil, to ascertain how it would act under varying temperatures; also an expansion test to ascertain how the volume of oil would vary with the heat. He did not make a test of any of the oil in these shipments, but all China wood oil has the same properties. He found that the oil would expand 1 per cent of its volume for every 20 degrees rise Fahrenheit. For this expansion test, he started with 50 degrees of temperature and went as high as 130 degrees, so that when it reached 100 degrees in temperature, it had expanded 2½ per cent.

"He also made tests to determine the rate of flow and viscosity, which is the readiness or rather the property of the oil that regulates the flow. He used the standard instrument to determine the viscosity, and found that it decreased very rapidly as the oil was heated, which indicated that the oil would flow

more readily under heat. As a comparison, at 60 degrees, water will flow 23.46 times as fast as oil through the same opening; at 120 degrees the water will flow 4.99 times as rapidly as the oil. In actual figures the increase in the rate of flow in cubic centimeters at 70 degrees is .169 cubic centimeters of oil a second would flow through this orifice, and at 120 degrees .602 cubic centimeters would flow through.''

It appeared also from a stipulation of the parties, offered by defendant, that in the course of transportation the cars encountered temperatures as high as 108 degrees, and evidence was offered to the effect that no wooden container could have held the oil without loss in August, 1916, when it was shipped.

It is admitted by all the parties that their rights must be determined by the Interstate Commerce Act, the contract of the parties, and the decisions of the federal courts declaring the law on this subject. *Adams Exp. Co. v. Croninger*, 226 U. S. 491; *Atchison, T. & S. F. Ry. Co. v. Harold*, 241 U. S. 371.

We understand the rule to be that a common carrier is liable as an insurer for the safe transportation of goods except where the loss happens, first, by the act of God, second, by the act of the public enemy, third, by the act of public authority, fourth, by the fault of the shipper, and fifth, by the inherent vice or infirmity in the goods shipped.

The defense here interposed is that the shipper was at fault in that it failed to place the oil in suitable containers; that the wooden barrels used were wholly unsuited for the purpose; and further that the shipper was at fault in that the barrels were shipped too full, thus failing to provide for the expansion of the oil, and thus causing damage.

While the bill of lading acknowledges the receipt of the goods in apparent good condition, we think in this respect the bill of lading is only a receipt and can be contradicted by other evidence. *Cunard S. S. Co. v. Kelley*, 115 Fed. 678; *Nelson v. Woodruff*, 1 Black

194    Appellate Courts of Illinois.

S. Valentine & Co. v. A., T. & S. Fe Ry. Co., 220 Ill. App. 188.

(U. S.) 156; *King v. Barbarin*, 249 Fed. 303; *Clark v. Barnwell*, 12 How. (U. S.) 272.

Appellee says there is no competent evidence in the record that these wooden barrels were improper vessels for carrying the oil, but with this contention we cannot agree. There was evidence in the record that these barrels would inevitably absorb a certain amount of oil, and in making its proof of damages the plaintiff proved the proper deduction to be made on that account. In addition to this there was evidence of those having experience that the inevitable effect of heat upon the oil was to cause it to expand in a way which would make the staves of barrels, such as these, give way, thus causing loss of the oil.

The testimony of the expert chemist as to the nature of the oil indicated that this was necessarily so. The defendant tried to prove that the barrels were made of green lumber, but the evidence was excluded, and we think properly so, because it was mere hearsay.

Appellee contends as the defendant had carried oil of this kind prior to this shipment, we must assume it had actual knowledge of the qualities and behavior; that it also knew about barrels, their nature, capacities, etc.; that their alleged defects, being perfectly apparent, it was defendant's duty to refuse the shipments, which as it did not do, and, having elected to carry the oil in the condition in which it then was, the carrier will not now be allowed to urge these defects as a defense. *Northwestern Marble & Tile Co. v. Williams*, 128 Minn. 514; *Hannibal & St. J. R. Co. v. Swift*, 12 Wall. (U. S.) 262; *Alabama Great Southern R. Co. v. Morris & Co.*, 249 Fed. 312. This is also the rule in Illinois, *Elgin, J. & E. R. Co. v. Bates Machine Co.*, 200 Ill. 636, and the English rule in *Higinbotham v. G. N. Ry.*, 10 W. R. 358.

In *Nelson v. Woodruff*, 1 Black (U. S.) 156, the federal court adopted the statement of the law applicable, as made by Chief Justice Shaw in *Hastings v.*

*Pepper,* 11 Pick. (Mass.) 43, as follows:

"It may be taken to be perfectly well established, that the signing of a bill of lading, acknowledging to have received the goods in question, in good order and well conditioned, is prima facie evidence that, as to all circumstances which were open to inspection and visible, the goods were in good order; but it does not preclude the carrier from showing, in case of loss or damage, that the loss proceeded from some cause which existed, but was not apparent when he received the goods, and which, if shown satisfactorily, will discharge the carrier from liability."

We think the proof offered for defendant at least made issues of fact for the jury as to whether the loss which occurred was or was not the result of the inherent nature or vice of the article shipped; was or was not caused by defects in the barrels which were not apparent to the carrier. The case should, therefore, have been submitted to the jury under proper instructions as to the law.

Appellee cites a line of authorities following the rule laid down in *Hannibal & St. J. R. Co. v. Swift,* 12 Wall. (U. S.) 262, where the railroad company was held liable for the loss of plaintiff's baggage which had, with the knowledge of the carrier, been placed in a car with other goods shipped, although there was plenty of room in the baggage car for it. That case is clearly distinguished from this one. There were there no questions of proper container or inherent nature of the goods. *Nelson v. Woodruff, supra,* seems to be controlling here.

*Reversed and remanded.*

Barnes, P. J., and Gridley, J., concur.