The action is to recover damages to goods and tobacco shipped by plaintiff with defendant as common carrier under contract from Brickstone, *Page 342 
Ga., to Henderson, N.C. in November, 1920. The evidence of plaintiff pertinent to the questions presented is as follows:
"D. L. Newman, the plaintiff, being duly sworn, testified as follows:
"I live in Henderson now and have lived here since the fall of 1920. I moved here in the fall of 1920 from Brickstone, Ga. There was no agent at Brickstone, Ga., so I went to the agent at Jones, Ga., and told him I wanted to ship to North Carolina my farming implements, potatoes, tobacco, household goods, mules and wagons. I told him that I was trying to sell my mules and wagon in Georgia, but if I could not sell them I would want a car to ship them here. The agent gave me rates both ways, with and without the mules. I sold the mules and wagons, so I loaded household goods, tobacco, potatoes, farming implements and the like in this car. At Brickstone the local train goes down one way one day and comes back the next. I flagged the train but the conductor did not see me, and I could not get him to have me the bill of lading. I went to Jones, Ga., a few miles away, and the agent gave me a bill of lading. He did not ask me what was in the car, but asked me was it loaded, and I told him yes, and that I had put the seal on the car. He wrote the bill of lading for carload of household furnishings, and I thought it was all right until I received the goods. The agent had given me two rates, and he gave me the lowest rate on the car because I had sold the mules and they were not shipped in the car. The agent lived at Jones, Ga.
"I told the agent at Jones Station I was going to put tobacco in the car. I filed a claim for 1,710 pounds of tobacco. I packed the tobacco in the car myself. I filed a claim for furniture amounting to $42.75. The railroad company never has offered to pay my claim for damage to the furniture.
"When my goods arrived in Henderson, it was not in the same car that I had shipped it in. My brother told me the stuff had come, and I told him he was mistaken because the number on the car was not the number called for in my bill of lading. I found that it was my goods, and there was a place broken out of the door of the car about six inches wide. I looked in the car and saw there was some tobacco tumbled in. I came to the agent here and he said it was my stuff. It was in such a mixed up condition I called Mr. Smith before I moved a thing, and he went up and looked at the car, and said to go ahead and unload it. Mr. Smith was a representative of the railroad here in Henderson. I came back and saw Captain Elmore. He looked at the bill of lading, and said it did not call for any tobacco, and said that would have to come through the warehouse and be weighed. I told him I was going to send the tobacco to the High Price Warehouse, and if he said so I would unload it and carry it to the High Price Warehouse. *Page 343 
"There came a rain while the car was on the way, and it blew in the car and wet the tobacco all through. The car I originally loaded the goods in broke down, and they unloaded every bit of my stuff and put it in this car that had the door broken. They did not pack the goods anything like I had it packed.
"The tobacco was not at all in the shape in which I had packed it. I had put some bags under the tobacco, and covered it up good like we do tobacco on the market here. The tobacco was already stripped and hung on sticks like we bring it to market here. When they reloaded the car they put the plows and other things in first and put the tobacco in last, just threw it in.
"I did not weigh the tobacco before it left Georgia. The 1,710 pounds is just what I carried to the High Price Warehouse. I think the tobacco was damaged 12 or 15 cents per pound. I had been raising tobacco ever since I left home. I went to Georgia to raise tobacco. I showed the tobacco to Mr. W. M. Ellis. He had the tobacco graded, and put it on the warehouse floor and tried to sell it for me. I say positively that at the time I went to the agent at Jones, Ga., in regard to this shipment, I told him I was going to load tobacco in the car.
"I say the man I lived with in Georgia shipped his part of this tobacco to Danville, Va., and it brought 18 cents a pound. There was no tobacco market at Brickstone at all. The year before I shipped tobacco to Henderson and sold with Mr. Taylor. I loaded household goods, tobacco, etc., in the car, or had it done. The railroad agent had nothing to do with the loading of the car. I sealed the car. The tobacco lay at the warehouse for nearly a year, and then I sold it to my brother for one cent a pound for manure."
"W. M. Ellis, witness for plaintiff, being duly sworn, testified as follows:
"I remember the tobacco that Mr. Newman shipped to himself here in Henderson sometime in 1920. I examined the tobacco that came in the car. I have had considerable experience with tobacco — have been raising it all my life, and have been in the warehouse business for five or six years. We were unable to sell it for anything. We graded it out and put it on the warehouse floor, and could not get any bid at all. I estimate that it would have averaged from fifteen to twenty cents a pound. The tobacco was graded in different lots like we usually grade it here. This particular tobacco belonging to Mr. Newman had been graded, and tied up nicely, just like we do the tobacco here, and had been hung on sticks like we fix it here for market. As to the condition of the tobacco, it was molded through and through, practically ruined. I cannot undertake to say whether that occurred while with the railroad or in some other way." *Page 344 
I. D. Smith, witness for plaintiff, being duly sworn, testified as follows:
"I am working for the Seaboard Air Line Railway Company. I remember seeing the shipment of goods in question. I saw the goods when they arrived and before they were unloaded. I saw the tobacco — it was not in a pile. The first thing I saw in the car was the tobacco. It was not in a pile or bulk, but scattered over the car. I could not say whether any of the furniture was broken. I remember seeing what was in the car — a lot of farming tools and household goods and the tobacco. It was a general mixture, and about the only thing I noticed was the tobacco that I remember. The tobacco was on sticks, tied in bundles and put on sticks. The tobacco was not packed down in a bulk nor crated when I saw it. I have nothing to do with the classification or tariff. I handle the claims."
Plaintiff also introduced a bill of lading of defendant company of date 18 November, 1920 for one carload of household goods, 12,000 pounds. Relative value 10 per cent. Consigned to plaintiff at Henderson, N.C. Freight prepaid, $177.80.
Defendant offers classification for tobacco and household goods as follows, and it being agreed that it was the classification in force at the time and filed with the Interstate Commerce Commission:
"Consolidated Freight Classification No. 1, page 391, item 21, leaf tobacco must be in bags, bundles or crates less than carload, and bags, bales, bundles or crates and in barrels, boxes or hogsheads in mixed carloads.
"Classification for household goods, page 222, item 14. — Household goods, value declared in writing by the writer; agreed upon in writing as to the released value of the property in accordance with the following: See notes 1, 2 and 3. Note No. 2. — Ratings on household goods apply only on second-hand furniture or furnishings for residences, with not to exceed one piano, but would not apply on articles the acceptance of which is prohibited by Rule 3, nor on any goods shipped for sale or speculation."
At close of plaintiff's evidence and of entire evidence there was motion for judgment of nonsuit. Motion overruled and exception noted. On denial of liability, issues were submitted and verdict rendered, set forth in the judgment which is as follows:
"This cause coming on to be heard before the undersigned Judge Superior Court at the Special May Term for Vance County, North Carolina, the following issues being found as set opposite, to wit:
"Was the plaintiff damaged by the negligence of the defendant? Answer: Yes. *Page 345 
"What damage, if any, was done to the furniture? Answer: $30.00.
"What damage, if any, was done to the tobacco? Answer: $205.00.
"It is therefore, on motion of J. P. Zollicoffer, attorney, ordered, adjudged and decreed that the plaintiff in this action recover from the defendant the sum of two hundred and thirty-five dollars, together with costs of this action, to be taxed by the court.
"C. C. LYON, Judge Presiding."
Defendant appealed, assigning errors.
It appears from the evidence that plaintiff's tobacco, shipped with defendant as common carrier, was practically ruined in the course of shipment by negligence of defendant company. Not only is this the permissible inference from the respective conditions of the tobacco when received by the company at the point of shipment and its delivery at the place of destination, but there is direct evidence that same, put in a defective car originally, was transferred by the company in the course of shipment and placed in a car having a hole in the door, by reason of which it was rained upon and thereby so injured as to render it practically valueless. These positions have been established by the verdict and damages assessed and judgment rendered for the injury, less the additional freight for a tobacco shipment, conceded to be $25.00. And on the record we find no valid reason for disturbing the results of the trial.
There is nothing to contradict the plaintiff's statement that the agent who made out the bill of lading was informed that the tobacco was to be included in the shipment, and on the facts of this record, if he chose to describe the entire shipment as household goods, such an act should not be allowed to injuriously affect the plaintiff except to render him liable for the additional freight due for the actual character of the shipment, and this, under his Honor's charge, has been accounted for to defendant.
Even if the term household goods could not be extended to include the tobacco, it is fully recognized that a bill of lading is not an essential to a valid shipment and the liability of a common carrier may attach on a shipment by parol. Bryan v. R. R., 174 N.C. p. 177; Davis v. R. R.,172 N.C. p. 209; Smith v. R. R., 163 N.C. p. 143; Porter v. R. R.,132 N.C. p. 71; Berry v. R. R., 122 N.C. p. 1002.
It is insisted further for defendant that its motion for nonsuit should have been allowed because the shipment is in violation of the classifications introduced in evidence and requiring that leaf tobacco be shipped *Page 346 
in bags, bales, bundles, etc. It is not at all clear that this tobacco when shipped was not in the shape referred to. The witness, I. D. Smith, an employee of the company testified that the tobacco was tied in bundles and put on sticks. But if the contrary be conceded, we do not understand that this classification is inhibitive in its terms or purpose or that it is to be regarded as an essential to a valid shipment. So far as discoverable from this record, it seems to be a provision inserted for the protection of the company and not directly bearing on the administrative regulations established primarily to prevent discrimination among shippers, and this being true, it could be waived by the company and should be considered waived on the facts as presented. And even if otherwise considered, the shipper being in no wilful default the only penalty enforceable would be the collection of the additional freight required by the schedules, and this, as we have seen, has been allowed for in the verdict.
There is nothing in the disposition of the case that in any way conflicts with our decision in Morris v. Express Co., 183 N.C. p. 144, cited for appellant. That was a case to some extent involving the rights of a shipper and carrier in reference to the contents of a closed package, and representations concerning in permitting the inference of fraud. But no such question is presented here where it is not denied that the company and its agent were fully informed of what the shipper intended to place in the car.
We find no error, and judgment for plaintiff is affirmed.
No error.