PEOPLE'S SAVINGS BANK OF SAGINAW *v.* PERE MAR-
QUETTE RAILWAY CO.

1. CARRIERS—CARRIER NOT LIABLE FOR SHORTAGE IN CAR LOADED
   AND COUNTED BY SHIPPER—UNIFORM BILL OF LADING ACT.
   Where an order bill of lading made out by the shipper
   described the contents of a car as "car sacked beans,"
   weight subject to correction 36,000 pounds, which called
   for 360 sacks, while in fact only 16 were loaded, and the
   letters "SLC" were written across the face of the
   bill, which meant that the shipper had loaded and counted
   the contents, which were unknown to the carrier, the
   latter was not liable to the purchaser of the bill for the
   shortage, being relieved of liability by sections 21 and
   22 of the uniform bill of lading act (39 U. S. Stat. p.
   538).[1]

2. SAME—GOOD-FAITH PURCHASER OF ORDER BILL OF LADING.
   The purchaser of an order bill of lading, who was familiar
   with the letters "SLC" thereon and their meaning, can-
   not be said to be an innocent purchaser.[2]

3. TRIAL—REQUESTED DIRECTED VERDICT—ESTOPPEL.
   Where both parties requested a directed verdict, neither
   may claim, on error, that there was a question of fact
   for the jury.[3]

Error to Gratiot; Moinet (Edward J.), J.    Sub-
mitted April 28, 1926.    (Docket No. 104.)    Decided
June 7, 1926.

Case by the People's Savings Bank of Saginaw
against the Pere Marquette Railway Company for
damages caused by a shortage in a shipment of beans.
Judgment for defendant on a directed verdict.    Plain-
tiff brings error.    Affirmed.

[1]Carriers, 10 C. J. § 147; [2]Id., 10 C. J. § 253; [3]Trial, 38 Cyc.
p. 1583.

*Charles H. Goggin,* for appellant.

*W. K. Williams* and *John C. Shields* (*Mathews & Montigel,* of counsel), for appellee.

McDonald, J.   This action was brought to re-
cover damages arising out of a shortage in a shipment
covered by an order bill of lading issued by the de-
fendant to the Alma Elevator Company of Alma,
Michigan, and sold to the plaintiff bank.   The Alma
Elevator Company was a corporation engaged in the
business of buying and selling grain, beans, coal, and
farm implements.   At the time of the transaction in
question Mr. J. R. Watkins was its manager.   On the
14th of December, 1923, the plaintiff bought from
Mr. Watkins the bill of lading in suit.   It was on a
shipment of a car load of beans "consigned to the
order of the Alma Elevator Company, notify Nelson
Sheppard Company, Columbus, Ohio."   Accompany-
ing the bill of lading was the Alma Elevator Com-
pany's draft for $1,440 drawn on Nelson Sheppard
Company of Columbus, Ohio, and payable on the ar-
rival of the shipment to the People's Savings Bank of
Saginaw, Michigan.

The bill of lading was made out by Mr. Watkins,
who loaded the car.   It described the contents as "car
sacked beans," weight subject to correction 36,000
pounds.   If there had been that quantity of beans in
the car there would have been 360 sacks.   As a matter
of fact, Watkins put in only 16 sacks.   This was dis-
covered when the car reached Toledo.   Because of
the shortage, the controversy in this case has arisen.
The plaintiff claims that it had no notice or knowledge
that there was a less quantity of beans in the car
than was represented by the bill of lading, that the bill
of lading represented that the shipment was of 36,000
pounds of beans or 360 sacks, that relying on such
representation it paid $1,440 for the bill of lading and

draft, and was therefore a good-faith purchaser for value. The defendant denies liability on the theory that the shipper loaded the car; that the contents were unknown to the carrier; that it was so stated in the bill of lading; that Mr. Watkins made out the bill of lading; that he wrote the letters SLC on the face of it, meaning that the shipper had loaded and counted the contents; that there also appeared on the face of the bill of lading a statement that the weight was subject to correction; that there was no representation on the part of the railroad company as to the quantity of beans in the car; that the plaintiff had notice of these facts, and that under the circumstances it had no right to assume that the car contained 36,000 pounds of beans. At the close of the testimony both parties asked for a directed verdict. The court directed a verdict for the defendant. The plaintiff brings error.

In his brief, counsel for the plaintiff discusses the assignments of error under two heads.

"*First.* That the description in the bill of lading issued by defendant company was a representation of the receipt by it of a car load of beans, upon which plaintiff bank, a good-faith holder for value, might rely, and having so relied to its detriment, defendant company was estopped from asserting that it had not actually received all the goods for which it receipted.
"*Second.* That under the facts in this case, it was a question for the jury to determine, under proper instructions, as to whether the plaintiff was chargeable with knowledge or notice of the presence of letters 'SLC' upon the bill, limiting the liability of the defendant company."

This is an interstate commerce shipment and is therefore governed by the Federal uniform bill of lading act (39 U. S. Stat. p. 538). In respect to bills of lading and the liability of carriers, sections 21 and 22 are applicable to the questions involved in this

case.    The plaintiff bases its right to recover under subdivision (b) of section 22.    In denial of liability the defendant relies on section 21.    These sections read as follows:

"SECTION 21.  That when package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill of lading that packages are said to contain goods of a certain kind or quantity or in a certain condition, or that the contents or condition of the contents of packages are unknown, or words of like purport are contained in the bill of lading, such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity or in the condition which the marks or labels upon them indicate, or of the kind or quantity or in the condition they were said to be by the consignor.    The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the non-receipt or by the misdescription of the goods described in the bill of lading: *Provided, however,* Where the shipper of bulk freight installs and maintains adequate facilities for weighing such freight, and the same are available to the carrier, then the carrier, upon written request of such shipper and when given a reasonable opportunity so to do, shall ascertain the kind and quantity of bulk freight within a reasonable time after such written request, and the carriers shall not in such cases insert in the bill of lading the words 'Shipper's weight,' or other words of like purport, and if so inserted contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein."

Section 22 is as follows:

"If a bill of lading has been issued by a carrier or on his behalf by an agent or employee, the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (*a*) the owner of goods covered by a straight bill subject to existing right of stoppage *in transitu,* or (*b*) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, for damages caused by the non-receipt by the carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

The undisputed facts in the instant case are that Mr. Watkins, manager of the Alma Elevator Company, loaded 16 sacks of beans into the defendant's car at Alma; that he made out and presented to the billing clerk the bill of lading in question; that the clerk accepted it, went to the car and sealed the doors, which had been closed by Mr. Watkins; that the bill of lading described the contents as "Car sacked beans," specified the weight "subject to correction" as 36,000 pounds, stated "contents and condition of contents of packages unknown," and that the shipper had loaded and counted the packages.

Under section 21 of the uniform bill of lading act these facts relieve the defendant of liability for non-receipt of any portion of the beans. As holder of an order bill of lading the plaintiff's right of action under section 22 of the uniform bill of lading act is limited by the provisions of section 21. He is given no right of action on a bill of lading which states that the contents are unknown or that the shipper and not the carrier loaded and counted the packages. On its face the bill of lading showed that the defendant was not representing the quantity and contents of the car. The plaintiff knew this. Its cashier, who transacted the business with Mr. Watkins, testi-

fies that he was familiar with the letters SLC on bills of lading, and knew that in this instance they meant that the shipper had loaded and counted the beans. He knew or should have known everything that appeared on the face of the bill, and must be held to have bought it with that knowledge. Under the circumstances he had no right to rely on the assumption that the car contained 360 sacks or 36,000 pounds of beans. He was not an innocent purchaser.

In his second contention counsel for the plaintiff contends that the court was in error in holding, as a matter of law, that the plaintiff was "chargeable with knowledge or notice of the presence of the letters 'SLC' upon the bill, limiting the liability of the defendant company." If there were any merit to this contention it is now of no avail to the plaintiff, because he asked for a directed verdict. Both parties requested the court to direct a verdict and neither can now claim that there was question of fact for the jury.

The judgment of the circuit court is affirmed. The defendant will have costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.