FRANK PERKEL, Plaintiff, *v.* THE PENNSYLVANIA RAILROAD COM-
PANY, Defendant.*

Municipal Court of New York, Borough of Manhattan, Ninth District,
June 30, 1933.

*Appeals by defendant dismissed by Appellate Term, First Department, Sept. 7,
1933.

*Emmet L. Holbrook*, for the plaintiff.

*Platt, Taylor & Walker* [*Roswell P. C. May* of counsel], for the defendant.

GENUNG, J.  The plaintiff is a wholesale produce merchant.  As such the plaintiff has dealt in watermelons for twenty-six years. During the season of 1929 the plaintiff dealt in carload lots of watermelons on the auction market at the Manhattan produce yards of the defendant in New Jersey.

The Pennsylvania Railroad Company, the defendant, is a common carrier, engaged in the transportation by railroad of goods for hire in interstate commerce, and, therefore, subject to the provisions of the Federal act to regulate commerce, as amended (U. S. Code, tit. 49, § 1).

As a part of its facilities in the New York district the defendant maintains and has maintained for a number of years the Manhattan produce yards at Kearny, N. J., where certain fruits and other perishables, including watermelons in season, were and are sold in carload lots, principally at public auction, to jobbers who in turn dispose of the produce to the retail trade.  These yards served and still serve as a market center for the produce trade with respect to the commodities handled there and the defendant furnished and still furnishes auction rooms on the premises for the

conduct of the sales following inspection of the shipments in the cars on track in the yards. The defendant required from the consignees written receipts for the delivery of the shipments prior to opening the cars for inspection by the auction buyers preceding the auction sales. Watermelons were and are bought and sold on the auction market in carload lots in the cars on track in the yards in the condition in which tendered by the defendant to the consignees and displayed for the sale. In some cases the purchasers at the auction take physical possession by unloading the melons and by selling them in truckload lots to retailers. In other instances the purchasers reconsign their cars to other points for disposition.

In July, 1929, the plaintiff engaged William W. Clark to purchase for and ship to the plaintiff from certain points in South Carolina watermelons in carload lots for sale on the auction market in the defendant's Manhattan produce yards. Twenty cars of watermelons of those purchased and shipped by Clark arrived at the Manhattan produce yards with the lading shifted and the melons injured. Their condition was disclosed when the cars were opened for inspection by the buyers preceding the auction sales and the cars were sold at auction as shifted, damaged cars. The values of the cars in the condition in which the defendant tendered them were from $30 to $100 less than what their values would have been had the defendant tendered them in the same condition as the plaintiff claims they were in when shipped.

The plaintiff claims that the melons in the twenty cars involved in these five actions were in good shipping condition and properly loaded when shipped and that the plaintiff is entitled to judgment on each of the twenty causes for the difference between the value of the cars on the auction market in the condition in which they arrived and were tendered at destination and the value they would have had on the auction market had they been tendered in the condition in which they were shipped.

On the other hand, the defendant contends (1) that the damage was due to improperly loading the melons for which it cannot be held liable under the Federal Bills of Lading Act (U. S. Code, tit. 49, § 101), because the rules contained in the defendant's classification filed with the Interstate Commerce Commission pursuant to the Federal statute required the shippers to load the cars and the bills of lading issued therefor were indorsed " S. L. & C.," meaning shippers' load and count; (2) that the defendant is not liable for pecuniary damage caused by " shift " alone, that is, without any injury to the frieght; (3) that the plaintiff has failed to establish the extent of the injury to the melons, namely, the number of

melons actually damaged, and is entitled, in any event, to no more than nominal damages; (4) that the plaintiff has failed to establish any depreciation in value due to shift alone; (5) that the damages cannot be measured by the values on the auction market because the auction took place prior to delivery of the property; (6) that the plaintiff is not the proper party to sue because the plaintiff sold the melons in transit and, therefore, the causes of action did not arise until delivery of physical possession to purchasers at the auction.

After a consideration of the evidence and after having observed the witnesses on the trial the court concludes that the melons involved in these twenty causes of action were in good shipping condition and properly loaded into the cars at the time of shipping them from their respective originating points; that the lading was shifted and the melons injured when tendered by the defendant to the plaintiff at destination and that the plaintiff has been damaged to the extent of the differences in values caused thereby as testified to on the trial.

The defendant was the delivering carrier within the terms of the Interstate Commerce Act, as amended effective March 4, 1927, and it is, therefore, responsible in like manner as the initial carrier. (U. S. Code, tit. 49, § 20, ¶ 12.)

The general rule applicable to these cases is that where property in good condition and properly packed is delivered to a carrier, its arrival in a damaged condition calls upon the carrier to explain the cause of the injury, if it is to escape liability. The injury is *prima facie* proof of the absence of care called for by the circumstances, and the party having the exclusive means of knowledge of the facts is thus called upon to disclose them. (*Fish* v. *Seaboard Air Line Railway*, 98 Misc. 662; *Rieser* v. *Metropolitan Express Co.*, 45 id. 632; *Hutkoff* v. *Pennsylvania R. R. Co.*, 29 id. 770; *Caldwell* v. *Erie Transfer Co.*, 13 id. 37; *Bowden* v. *Fargo*, 2 id. 551; *Pereira* v. *American Ry. Exp. Co.*, 207 App. Div. 692; *Park* v. *Preston*, 108 N. Y. 434; *Kilthau* v. *International Mercantile Marine Co.*, 245 id. 361.) The duty of a common carrier is to transport and deliver safely. He is made by law an insurer against all failure to perform this duty, except such failure as may be caused by the public enemy, or by what is denominated the act of God. (*Bank of Kentucky* v. *Adams Ex. Co.*, 93 U. S. 174; 23 L. Ed. 872; *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. [U. S.] 344; 12 L. Ed. 465; *Gardiner* v. *N. Y. C. R. R. Co.*, 139 App. Div. 17.) It is sometimes said that the basis of the carrier's liability for loss of goods or for their damage in transit is " presumed negligence." But the so-called presumption is not a true presumption, since it

cannot be rebutted, and the statement itself is only another way of stating the rule of substantive law that a carrier is liable for a failure to transport safely goods intrusted to its care, unless the loss or damage was due to an act of God, the public enemy or to a cause validly excepted in the contract of carriage. (*Chesapeake & Ohio Ry. Co.* v. *Thompson Mfg. Co.*, 270 U. S. 416.) The law adjudges the carrier responsible, irrespective of any question of negligence or fault on his part, if the loss does not occur by the act of God or the public enemy, or fall within an excepted cause. (*Merritt* v. *Earle*, 29 N. Y. 115; *Heyman* v. *Stryker*, 116 N. Y. Supp. 638.)

Common carriers, holding themselves out as shippers of perishable fruit, are held to a higher degree of care than when engaged in the shipment of household goods, or other articles not inherently perishable, and there is no reason why the rule as to burden of proof should not apply since the carrier has the superior ability to furnish the proof as to what caused the damage. (*Fish* v. *Seaboard Air Line Railway*, supra; *Pereira* v. *American Ry. Exp. Co.*, supra; *Brennison* v. *Pennsylvania R. Co.*, 101 Minn. 120; 111 N. W. 945; *Fockens* v. *United States Express Co.*, 99 Minn. 404; 109 N. W. 834; *Ammon* v. *Illinois Central R. R. Co.*, 120 Minn. 438; 139 N. W. 819; *Presley Fruit Co.* v. *St. L., I. M. & S. Ry. Co.*, 130 Minn. 121; 153 N. W. 115.)

The defendant relies on section 1 of rule 27 of its classification which reads as follows: " Owners are required to load into or on cars freight for forwarding by rail carriers, and to unload from cars freight received by rail carriers carried at carload ratings."

The effect of this rule is nothing more than that where freight is carried by rail at carload ratings the shipper must assume the burden or expense of loading into the car and the person who is ultimately to receive physical possession of the property must bear the burden or expense of unloading from the car; that the service of loading and unloading by the carrier is not covered by the rate or freight charged.

The bills of lading covering these twenty cars were indorsed " S. L. & C.," an abbreviation for shippers' load and count in accordance with the Federal Bills of Lading Act which provides: " The carrier may also by inserting in the bill of lading the words ' Shipper's weight, load, and count ' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the non-receipt or by the misdescription of the goods described in the bill of lading."

This statute was designed to protect the carriers against innocent purchasers of bills of lading where the carrier neither loaded, counted nor observed the condition or loading of the property and to permit the carriers to issue bills of lading indorsed so that the documents themselves will not constitute a representation to purchasers as to the property shipped, its quantity, its condition or loading. The act and indorsements on the bills of lading in these cases cannot relieve the defendant from responsibility here since the court has determined from the evidence that the melons were properly loaded.

Five of the twenty cars involved are claimed by the defendant to have been inspected by representatives of the initial carrier sometime during the loading at which times the inspectors claim there were defects in the melons as well as in the loading. Where defects in a shipment are perfectly apparent, it is the carrier's duty to refuse the shipment, and if it elects to carry it in a defective condition, the carrier will not be allowed to urge these defects as a defense and full common-law liability will attach. (*Gehrke* v. *American Ry. Exp. Co.*, 61 N. D. 668; 81 A. L. R. 808; 240 N. W. 321; *Valentine & Co.* v. *Atchison, T. & S. F. Ry. Co.*, 220 Ill. App. 188; *Northwestern Marble & T. Co.* v. *Williams*, 128 Minn. 514; 151 N. W. 419; L. R. A. 1915D, p. 1074; 4 R. C. L. 665, § 142.) Therefore, it would seem that, even if the melons in the five cars claimed by the defendant to have been inspected at their respective points of origin were improperly loaded, the provisions of the Federal Bills of Lading Act would have no application and the full common-law liability as carrier would attach to the contracts of carriage.

The court has determined that the melons involved in these cases were in good shipping condition and properly loaded when shipped, and the defendant having failed to sustain the burden imposed upon it by law, liability results.

The defendant urges that it is not liable for pecuniary damage caused by " shift " alone, and that the plaintiff has failed to establish any depreciation in value due to " shift " alone. The evidence establishes injury to the melons in each of the cars involved, which sufficiently disposes of these contentions.

The defendant also argues that the plaintiff can recover only nominal damages since the evidence does not disclose the number of melons in each car which were actually injured. The theory advanced is that in order to mitigate the damages the plaintiff was required to accept physical possession of the melons, unload them and in that manner ascertain the number actually injured and the damages sustained. The burden of showing how the plaintiff could mitigate the damages falls upon the defendant and no evidence

was offered to show that such action by the plaintiff would mitigate the damages. Opposed to this lack of evidence is the affirmative showing by the plaintiff that a car contains some 800 to 1,200 melons and that to adopt the procedure suggested by the defendant would entail an expense of two cents per melon for unloading and another two cents per melon for reloading, would result in a delay of at least one day in the sale and, in addition, would depreciate the value of the car since it would not be a fully loaded car. From this proof it appears that, instead of mitigating the damages, the procedure suggested would enhance them.

The defendant insists that under section 1 of rule 27 of the classification the plaintiff was under an affirmative duty to accept these shipments at destination and to unload them. So far as unloading is concerned, the purport of the rule is nothing more than an agreement that when the ultimate owner takes physical delivery of the property shipped, he must bear the expense of unloading instead of the carrier.

From the fact that the plaintiff did not himself take physical delivery of the melons, the defendant argues that the damages cannot be measured by the values on the auction market. This is based on the contention by the defendant that under the contracts of carriage the defendant's duty was to transport and deliver the property in safety and that the causes of action could not accrue until physical delivery was effected; that the contracts were executory and the causes of action could not arise until performance was complete.

The bills of lading covering these cars, with the classification and schedules of the defendant, embrace almost every service or handling which might have been rendered these shipments. The undertaking to transport may be considered separately from the rest and the causes of action here are predicated in the final analysis upon the defendant's failure to transport the shipments to their destinations in safety. A cause of action arising out of a breach of a contract accrues at the time the breach is completed. (*Bykowsky* v. *Public Nat. Bank of N. Y.*, 209 App. Div. 61.) Where goods are lost while in the possession of the carrier, the cause of action accrues at the time of the loss. (*Finn* v. *Western R. R. Corp.*, 102 Mass. 283; *Aristo Hosiery Co.* v. *Atlantic Coast Line R. Co.*, 128 Misc. 238.) These causes of action, therefore, were complete when the defendant tendered these shipments at destination in a damaged condition.

The correct measure of damage is the difference between the market value here of the carload lots of melons in the condition in which they were when shipped and their market value in the con-

dition in which they were when tendered by the defendant to the plaintiff. (*Greenwald* v. *New York C. & H. R. R. R. Co.*, 95 Misc. 122; *Kilthau* v. *International Merc. M. Co.*, *supra*.) The plaintiff is entitled to be put in as good condition as he would have been in if the defendant had tendered the carloads uninjured. (*King* v. *Sherwood*, 22 App. Div. 548.) In applying the measure of damages regard must be had to the expense of acceptance and the use and to the purpose for which the shipment is intended. (*Crinella* v. *Northeastern Pac. R. Co.*, 259 Pac. 774.) The plaintiff is entitled to recover the loss of what he would have had if the contract had been performed, that is, if the carloads had been conveyed safely. (*Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97.) The actual loss which the plaintiff has sustained and which he is entitled to recover is the difference in value on the auction market of the carloads in the condition in which they were tendered by the defendant to the plaintiff and in the condition in which they were when shipped.

The remaining contention of the defendant is that the plaintiff is not the proper party to sue because the plaintiff sold the melons in transit and that, therefore, the causes of action did not arise until delivery of physical possession to the purchasers at the auction. The causes of action were complete when the melons were injured although the damage was not discovered until the cars were tendered at destination. The cars were sold to the purchasers in their damaged condition as damaged shipments. There was no sale by the plaintiff of his causes of action against the defendant which had already accrued.

The defendant also argues that the contracts had not been performed because in a number of instances cars are reconsigned to other destinations after sale on the auction market. The defendant's tariffs provide: "*Reconsignments:* Rule No. 10 (a). A shipment which has reached destination and which is reforwarded to a new destination will be known as a reconsignment."

A reconsignment is effected by means of a new agreement additional to and extending certain of the terms of the original contract over a new and additional period of transportation. (*American Cotton Products Co.* v. *New York Central R. R. Co.*, 142 Misc. 821; *Wien* v. *New York Central R. R. Co.*, 166 App. Div. 766.)

Where a carload shipment is purchased in transit without inspection by the purchaser, or without his knowledge, actual or constructive, of the existence of injury to the shipment while in the possession of the carriers, and the purchaser assumes the payment of the freight charges, unless the contrary is proved, he purchases property in good condition and properly loaded as of the point of shipment

and hence he is justly entitled to recover against the carriers for damage to the shipment at their hands. On the other hand, where the property is inspected or displayed for inspection by the purchaser, he takes the property in the condition in which it is offered for sale without redress against the carriers for any damage caused prior to the sale, the right of action for such damage remaining with the seller. However, if the shipment should suffer further injury at the hands of the carriers for which they would be responsible whether in transit, awaiting delivery or while being transported after reconsignment, the purchaser would have a cause of action for the additional or further damage. The plaintiff here is the proper party to sue for the damages claimed.

Judgment is directed in favor of the plaintiff and against the defendant in action No. 1 for $245, with interest on $120 from July 29, 1929, and on $125 from July 30, 1929; in action No. 2 for $110, with interest from July 29, 1929; in action No. 3 for $190, with interest on $50 from July 23, 1929, on $35 from July 29, 1929, on $65, from July 30, 1929, and on $40 from August 2, 1929; in action No. 4 for $345, with interest on $55 from July 29, 1929, on $65 from July 30, 1929, and on $225 from July 30, 1929; and in action No. 5 for $215, with interest on $130 from July 30, 1929, and on $85 from August 5, 1929.