## O'BRIEN v. McDOW. (No. 1672.)

Court of Civil Appeals of Texas. Beaumont. June 26, 1928.

Rehearing Denied July 11, 1928.

1. Sales ⊕417—Evidence held to sustain finding as to market value of cattle at time and place for delivery.

In action for breach of contract by refusal to deliver cattle purchased, evidence *held* to sustain jury's finding that market value of cattle per head at time and place fixed for delivery was $27.

2. Trial ⊕253(5)—Question to jury as to consummation of sale contract held not erroneous, as eliminating issue of withdrawal of offer to sell before acceptance.

In action for breach of contract by refusal to deliver cattle, question to jury as to whether defendant agreed to sell and deliver, and plaintiff to buy and pay for, cattle on certain days, *held* not erroneous, as depriving jury of opportunity to pass on issue of withdrawal of offer to sell before plaintiff accepted it.

3. Appeal and error ⊕1062(1)—Objection that question to jury eliminated issue of withdrawal of offer to sell before acceptance was obviated by submission of such issue at seller's request.

Objection that question to jury whether defendant agreed to sell and deliver, and plaintiff to buy and pay for, certain cattle, deprived jury of opportunity to pass on issue of withdrawal of offer to sell before acceptance, was obviated by seller's requested issue, directly and affirmatively carrying issue of withdrawal

to jury, which answered it against seller's contention.

**4. Appeal and error ⟨⟩742(6)—Proposition, without assignment, that judgment not allowing for transportation cost in awarding damages for seller's refusal to deliver cattle was erroneous, need not be considered.**

Proposition, not supported by assignment, that judgment not allowing for cost of transportation in awarding damages for seller's breach of contract to deliver cattle was erroneous, need not be considered, fundamental error being presented.

**5. Appeal and error ⟨⟩1033(8)—Seller, refusing to deliver cattle, cannot complain of judgment for difference between f. o. b. contract price and market value at place designated.**

In action for seller's breach of contract for sale of cattle f. o. b. certain place by refusal to deliver thereat, defendant could not complain of judgment for difference between 'f. o. b. contract price and market value of cattle at such place, not being injured thereby.

**6. Appeal and error ⟨⟩1067—Refusal to charge on burden of proof is not reversible error, where special issues are clearly worded, and jury instructed to answer from evidence.**

While charge on burden of proof is proper in case submitted on special issues, refusal so to charge is not reversible error, where issues are clearly worded, and jury is instructed to answer "from the evidence."

**7. Appeal and error ⟨⟩1053(6)—Admission of testimony as to amount offered plaintiff for cattle, not delivered by defendant, merely to impeach defendant's witness, held not reversible error, in view of limitation by court.**

In action for seller's breach of contract by refusal to deliver cattle, admission of testimony of plaintiff's witness as to offering plaintiff stated sums for cattle *held* not reversible error, where court stated that it was not admitted to show market value or measure of damages, but merely to impeach defendant's witness, and so instructed jury.

**8. Appeal and error ⟨⟩662(2)—Appellant, accepting bill of exceptions with court's statement that testimony was received only to impeach witness, is bound by recitations.**

Appellant, making no statement from record, showing that no effort was made to impeach witness, but accepting bill of exceptions to admission of testimony with court's' statement that it was received for such purpose only, is bound by recitations therein.

**9. Evidence ⟨⟩543(4)—Admission of experienced cattleman's testimony as to market value of cattle held not abuse of discretion.**

Admission of testimony as to reasonable market value of cattle by witness of many years' experience in buying and selling cattle, and knowing importance of place fixed for delivery of cattle sold as cattle shipping point, elements entering into market value of cattle, cost and expense of gathering them for shipment, cost of transportation, and general market price of cattle at central markets, *held* not

abuse of trial court's discretion as to qualification of witness.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Action by A. M. McDow against B. M. O'Brien, on whose death his widow, as temporary administratrix, was made defendant. Judgment for plaintiff, and defendant administratrix appeals. Affirmed.

Boyles, Brown & Scott, of Houston, and P. C. Matthews, of Liberty, for appellant.

E. B. Pickett, Jr., of Liberty, for appellee.

WALKER, J. This suit was instituted by appellee against B. M. O'Brien, now deceased, to recover damages for breach of contract. Appellee alleged that B. M. O'Brien sold him, f. o. b. Devers, Tex., 500 head of cattle at $20 per head, to be delivered on or about the 1st day of June, 1926; that the cattle were of the reasonable market value at that time and place of $30 per head; that O'Brien wrongfully breached the contract by refusing to deliver the cattle, to appellee's damage $5,000. On a trial to a jury, the issues were submitted by the following questions, answered as indicated:

"Question No. 1: Did the defendant, B. M. O'Brien, on or about May 11, 1926, agree to sell to the plaintiff, A. M. McDow, the entire stock of cattle branded O—bar, made thus, —O—, and to deliver same at Devers, Texas, on June 1, 1926, for the price of $20 per head, and did said McDow, on or about May 11, 1926, agree to buy from said O'Brien said stock of cattle, and to pay him $20 per head therefor on delivery of same at Devers, Texas, on June 1, 1926? (Answer yes or no.)"

The jury answered this question: "Yes."

"Question No. 2: Was the plaintiff, A. M. McDow, on June 1, 1926, ready, willing, and able to pay to the defendant, B. M. O'Brien, the sum of $20 per head for said stock of cattle? (Answer yes or no.)"

The jury answered this question: "Yes."

"Question No. 3: How many head of cattle did said entire stock of cattle include and consist of, counting all calves born up to and including the 31st day of May, 1926?"

In answer to this question the jury found that the stock of cattle in question consisted of 500 head.

"Question No. 4: What was the market value of said stock of cattle, per head, at Devers, Texas, on June 1, 1926?"

In answer to this question, the jury found that the market value thereof per head at Devers, on June 1, 1926, was $27.

On defendant's request, the court submitted an additional question, designated as "Special Issue No. 1 Requested by Defendant," reading:

"If you find that the defendant, B. M. O'Brien, offered to sell the cattle in question to the plaintiff, A. M. McDow, did the said defendant, B. M. O'Brien, withdraw, call off and can-

cel such offer to sell before the plaintiff, A. M. McDow, agreed to purchase? (Answer yes or no.)"

The jury answered this question: "No."

After the rendition of the verdict, but before judgment, B. M. O'Brien died, and his surviving wife, as temporary administratrix, was made a party, and judgment being against her in that capacity for $2,700, with interest at the rate of 6 per cent. per annum from the 1st day of June, 1926, she has duly perfected her appeal.

[1] None of the findings of the jury are attacked, except the answer to question No. 4. An assignment is presented against the form of question No. 1. Without discussing the testimony in detail, the answer to question No. 4 is fully sustained. The evidence of appellee's witnesses clearly supported the finding. The testimony of O'Brien himself was that, after his failure to deliver the cattle to appellee, he sold his herd for $10,000, believing that he had only 400 head. On O'Brien's testimony, the cattle actually sold, on his estimate of the number of cattle, at $25 per head. One of appellant's witnesses, in testifying as to the value of the different classes of cattle involved, put a total value of the 500 head at $12,660, which is more than $25 per head. Speaking of the jury, appellant admitted in her brief:

"It does not appear that the jury was biased or prejudiced, or that it acted on any improper motive in arriving at its verdict. No misconduct can be attributed to it."

On the statement made, the finding in answer to question No. 4 must be sustained.

[2, 3] Appellant attacks the form of question No. 1 by her eighth proposition, as follows:

"Since the first special issue assumed that the alleged agreement of O'Brien and the alleged agreement of McDow were mutual—that is, that such agreements were concurrent as to time—such special issue was erroneous, and should not have been submitted to the jury."

The evidence was that O'Brien's offer to sell was made to appellee on May 11, 1926, and during their meeting on that date the sale was consummated. Appellant concedes that O'Brien offered to sell his cattle to appellee on the terms pleaded, but insists that the offer was retracted before appellee accepted it. As we understand her criticism of this issue, it is that the jury was deprived of the opportunity to pass on the issue of withdrawal. Question No. 1 is not open to the criticism urged; but, if it were, the objection was obviated by appellant's special requested issue No. 1, which directly and affirmatively carried the issue of withdrawal to the jury, and which the jury answered against her contention. We do not discuss this proposition

further, since appellant concedes in her discussion of her eighth proposition:

"Appellant might concede that, standing alone, this proposition, if it pointed out the only error in the trial of this case, might be insufficient upon which to base a reversal."

[4, 5] Appellant's fourth proposition is as follows:

"Since it appears that the cattle were to be delivered aboard the cars at Devers, Tex., and that they were to be transported to some other place, which transportation would necessarily entail cost and expense for freight, etc., the measure of damages, if any, for the alleged breach of the contract of sale by defendant, would be the difference in the contract price and the market value at Devers, less the cost of transportation, and, since the judgment did not allow for such cost of transportation, it is fundamentally erroneous."

This proposition is not supported by any assignment, and, as it does not present fundamental error, requires no further discussion. However, if it had been duly assigned, no error is disclosed. The contract was f. o. b. Devers, Tex. Therefore, in giving appellee judgment for the difference between the f. o. b. contract price and the market value at Devers, appellant has suffered no injury. This is a matter of which she cannot complain.

[6] Appellant duly excepted to the refusal of the trial court to charge on the burden of proof. On the facts of this case, considering the manner of submitting the special issues, the refusal to so charge was not error. The court instructed the jury:

"I will propound to you certain questions, which you will answer, as you may find from the evidence."

While a charge on the burden of proof is proper in a submission on special issues (Goree v. Uvalde National Bank [Tex. Civ. App.] 218 S. W. 620), the refusal to so charge is not reversible error; where the issues are clearly worded and the jury is instructed to answer "from the evidence" (Blum v. Strong, 71 Tex. 324, 6 S. W. 167). Citing that case and many other cases, it was held in Railway Co. v. Bush, etc. (Tex. Civ. App.) 136 S. W. 102, that where the charge as given sufficiently indicates the question of fact to be found, a requested charge submitting the issue of burden of proof was properly refused. The charge before us submitted the issues clearly and fairly, and the jury were instructed to answer "as you may find from the evidence." The language of its charge is in this respect almost identical with the language in Blum v. Strong, supra. See, also, Davis v. Hill (Tex. Civ. App.) 291 S. W. 683; Kuehn v. Kuehn (Tex. Civ. App.) 259 S. W. 295; Levy v. Jarrett (Tex. Civ. App.) 198 S. W. 334.

[7] Appellant's first, second, and third prop-

ositions are based upon her fifth bill of exceptions, which is as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause, while G. E. Boothe, a witness for plaintiff, was testifying on direct examination after having been recalled to the stand by the plaintiff, and after he had testified, 'I stated that I came here in person and inspected the O'Brien cattle some time after May 1st, last year; I came here at the instance of Mr. McDow,' he was interrogated by plaintiff's counsel and answered as follows: 'Q. What was your object in coming? A. To buy those cattle. Q. From whom? A. Mr. McDow.'

"Whereupon counsel for defendant stated to the court: 'To which we object for the reason, first, that the witness is not qualified as to the market value of the cattle in question, in or at the vicinity of Devers, Tex., on June 1st, last year, for that reason the testimony as to market value is not admissible; second, the further reason that as to what this man would pay for that bunch of cattle is not a criterion in fixing the market value of the cattle or the measure of damages to be allowed, if there was a contract.'

"Attorney for plaintiff then stated that said testimony was tendered for all purposes. Whereupon the court said: 'This testimony is not being admitted for the purpose of either showing market value or the measure of damages, but is merely admitted for the purpose of impeaching the witness Meecum, rebutting his testimony, for whatever it is worth along that line.'

"Then counsel for defendant stated: 'The further objection, if offered for the purpose of impeaching Meecum, that the witness Meecum was not present and did not know anything about this man coming there to make this offer, and therefore not competent testimony to impeach his testimony.'

"Then the court said: 'Overrule the objection.' And the witness proceeded to testify as follows: 'I offered Mr. McDow $30 for the whole bunch, everything around, or $45 for the big steers loaded on the cars. I made that offer after I came here and looked at a part of them. That included the calves born up to May 31st.'

"Then counsel for defendant stated: 'It is understood our objections go to all his testimony.' And the court replied: 'It is only admitted for the purpose of showing that an offer of that kind had been made, and for no other purpose.'

"And such testimony and statements of court and counsel, as so given and made, appear on pages 102 to 104 of the statement of facts. To which action of the court, in admitting such testimony in evidence, defendant then and there in open court, at the time thereof and before such testimony was given, excepted."

Appellant's propositions are to the effect that the evidence excepted to was in proof of special damages, where the issue was not raised by the pleadings, and that was no proof that O'Brien knew, at the time he made the contract with appellee, of the special contract testified to by the witness. The bill of exceptions is clear and plain. The court stated in emphatic language that the testimony was not being admitted for the purpose of showing market value or measure of damages, but merely to impeach the witness Meecum, "rebutting his testimony, for whatever it is worth along that line." And again, the court, in connection with this testimony, as shown by the bill, instructed the jury that it was admitted for the purpose of showing that an offer of that kind had been made, and for no other purpose. The language of the trial court was an instruction to the jury that the evidence was not to be considered by them on the issues of market value or the measure of damages, but only to impeach the witness Meecum, and that it could be considered by them for no other purpose.

[8] Appellant says, by way of argument, that no effort was made to impeach Meecum, and that the issue of impeachment was not raised. But she makes no statement from the record showing that fact. On the contrary, she accepted her bill with the statement from the court that the evidence was received for impeachment purposes, and, on the showing made by her, she is bound by the recitations in her bill. Under the court's instruction to the jury, they could not have considered this testimony for an improper purpose, and therefore appellant was not injured by its reception. The charge, as given, was not excepted to by the appellant, and appellant requested no further instruction to guide the jury in their consideration of this testimony. These propositions do not suggest reversible error.

[9] By her fifth proposition appellant insists that appellee, McDow, and his witnesses, Boothe and Hilboldt, were not qualified to testify on the issue of market value of the cattle in question at Devers. These witnesses testified that the reasonable market value of these cattle was $30 per head. Their evidence showed that they were cattle men of many years' experience in buying and selling cattle in a general way all over the state of Texas, and especially in that section of the state where O'Brien contracted to deliver the cattle to appellee. They knew of Devers and its importance as a cattle shipping point; that it was a heavy shipping point for cattle. They knew the elements entering into the market value of cattle, the cost and expense of gathering them for shipment, the cost of transportation, and the general market price of cattle at central markets. The following excerpts from their testimony shows them to be qualified:

McDow testified:

"I have known Devers as a shipping point for, I reckon, 30 years. I shipped cattle from Devers. When I made the trade with O'Brien for these cattle, Devers is where he wanted to deliver and load them. * * * When I made this trade with Mr. O'Brien, which called for delivery at Devers, Tex., I was already acquainted with where Devers was. I had loaded stuff there at Devers for the last 30 years."

Boothe testified:

"I live in Eagle Lake, Colorado county, Tex. I handle cattle and run a store. I recall having come to Liberty county with Mr. McDow some time in May of last year to look over some cattle. We looked at the O–bar brand of cattle. We spent the greater part of the day on the range looking over the cattle. I took particular note for the purpose of informing myself as to the kind of cattle that stock was composed of; that is, as to the value and ages of the cattle. That is what I was here for, to look at the cattle."

And:

"I had never bought any cattle at Devers. I had never seen any sold there. I don't know that I ever saw anybody else sell any there. I was right close to Devers that day. I do know what a cow or steer is worth when I look at it. It doesn't make any difference whether I had ever been in there or not, if I looked at a steer I would know what he was worth at Devers. I have been pretty near all over Texas. I don't know as I have been there at Devers. Eagle Lake is approximately 110 or 112 miles from Liberty county. This is the first time I was ever right here, at Liberty looking at cattle. I don't know whether the White ranch is considered in this territory or not. I bought cattle there. That is in Chambers county."

Hilboldt testified:

"Been in the cattle business since I have been able to ride. I lived and spent about three years of my life in Liberty county. My headquarters were at Dew Bros. ranch, three or four miles east of Devers. I am familiar with the town of Devers, on the T. & N. O., and know it is a shipping point for cattle. I was in this county from 1917 to 1920, the summer of 1920."

Further he testified that he knew the O–bar brand of cattle and that:

"I have frequently participated in the buying and selling of cattle. I was doing that when I was living here, helping people to handle cattle and came in contact with them. I kept posted as to the market value of cattle during the year 1926 at the different places where cattle would be located in this section of the state."

He also stated:

That the value of cattle is arrived at, as a rule, "on what the prices are all over the coast part of the state, from Sealy all the way around into Beaumont." "The grade, kind of cattle, age, weight, and the fineness of the cattle has something to do with the market value. I can, from my experience as a cow man, pass on the market value and determine what, in my opinion, would be the market value of a certain stock of cattle, without having seen them, if some one would give me an accurate description of them."

And, when examined by defendant to test his qualification, the witness Hilboldt testified:

"I never bought any cattle at Devers. I have seen cattle sold there. I saw them sold there in 1926. * * * I didn't actually see the cattle sold. But I didn't stay over there three years for nothing. * * * I didn't see them when they were delivered at Devers, Tex. The price that was paid for them at Devers was told to me by somebody else."

It has been held that the qualifications of a witness on the issue of market value rest largely in the discretion of the trial court, and its conclusions will not be disturbed upon appeal, "unless abuse be clearly shown." Byrd v. Smith (Tex. Civ. App.) 157 S. W. 262; Bank v. Henderson (Tex. Civ. App.) 286 S. W. 518; Automobile Underwriters of America v. Radford (Tex. Civ. App.) 293 S. W. 872; Electric Company, etc., v. Whitenack (Tex. Civ. App.) 297 S. W. 260. In Railway Co. v. Fagan, 72 Tex. 130, 9 S. W. 750, 2 L. R. A. 75, 13 Am. St. Rep. 776, it was said:

"Knowledge of the market value of an article is hardly an opinion; it is a fact known from information. If a witness is not fully qualified to state the fact a cross-examination will show it. Such matters go to the weight of the evidence and the credibility of the witness and not to the competency of his testimony."

In Texarkana & Ft. S. R. Co. v. Bell (Tex. Civ. App.) 101 S. W. 1170, it was said:

"If a person shows his business is such that, by commercial reports or other like means, he is familiar with the current market prices of an article, he is competent to testify on the subject, although he may have no personal knowledge of any particular sales."

In view of the foregoing authorities, the trial court did not abuse its discretion in receiving the testimony of these witnesses on the issue of market value.

It follows that the judgment of the trial court must be affirmed; and it is accordingly so ordered.